**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DUGAN, AURORA DUGAN and MATTHEW TAPSCOTT, each individually and on behalf of all others similarly situated, | No. C 12-02549 WHA |
| Plaintiffs, | and |
| v. | No. C 12-02937 WHA |
| LLOYDS TSB BANK, PLC, | |
| Defendant. | **ORDER RE PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS AND PLAINTIFFS' MOTION FOR LEAVE FOR INTERVENTION OF ADDITIONAL NAMED PLAINTIFFS** |
| DAVID T. OSMENA and PATRICIA HOGAN-OSMENA, husband and wife, and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | |
| LLOYDS TSB BANK, PLC, a bank organized and existing under the laws of the United Kingdom, | |
| Defendants. | |

**INTRODUCTION**

In these related proposed class actions, plaintiffs seek leave to file amended complaints and two intervenors seek to be added as plaintiffs. For the reasons stated below, this motion is **GRANTED IN PART AND DENIED IN PART.**

**STATEMENT**

In both actions, defendant is Lloyds TSB Bank, PLC, a bank organized under the laws of the United Kingdom with branches in Hong Kong and New York, among other places. Plaintiffs claim contractual breaches, breach of the implied covenant of good faith and fair dealing, and violation of California's Unfair Competition Law (Bus. & Prof. Code § 17200, *et seq.*) in connection with certain Lloyds' loan products.

Plaintiffs in both actions obtained Lloyds' "dual currency" loans. These loans, which herein Lloyds labels as International Mortgage Service ("IMS") loans: (1) were issued in U.S. dollars but could be redenominated into foreign currency at the borrower's discretion; (2) once redenominated, were subject to a "principal cap" of 120 percent of the original principal; (3) were subject to a variable interest rate to be set at 1.5 percent above Lloyds' "cost of funds"; and (4) were secured by United States real property.

In 2007, the existing *Osmena* plaintiffs, residents of California, refinanced their California real property in a $975,000 dual-currency loan. Also in 2007, the three existing *Dugan* plaintiffs, residents of California, financed four California real properties under a total of $5,355,000 in dual-currency loans. In reliance upon the principal-cap provision, plaintiffs shortly thereafter redenominated their loans into yen, which allegedly began to rise sharply against the dollar. Plaintiffs allege Lloyds then recalculated their principal owing at an amount higher than the 120 percent cap provided by the loan agreement. Furthermore, plaintiffs allege Lloyds arbitrarily raised their interest rate, contractually tied to Lloyds' cost of funds, even though other cost-of-funds indices worldwide were falling.

The *Dugan* plaintiffs filed a proposed class action on May 17, 2012, alleging breach of contract, violation of California's Section 17200, violation of Hong Kong laws, breach of the implied covenant of good faith and fair dealing, and fraud. The *Dugan* plaintiffs originally proposed to represent classes with the following characteristics: (1) a "nationwide" class whose loans could be redenominated into yen, had a cost-of-funds provision, had a principal-cap provision, and were secured by real property; (2) a "California" subclass whose loans were secured by California real property; (3) a "dollar" subclass for California borrowers who

redenominated from dollars to yen and back to dollars and who did not secure their loans with real property; and (4) an "injunction" subclass for California borrowers facing foreclosure.

The *Osmena* plaintiffs filed their proposed class action complaint on June 6, 2012, which they amended once as a matter of course July 6, 2012, alleging breach of contract, violation of Section 17200, and fraud. The *Osmena* plaintiffs proposed to represent the following classes: (1) a "nationwide principal cap" class whose loans had a principal cap exceeded by Lloyds; and (2) a "nationwide interest rate manipulation" class whose loans had a "cost of funds" provision despite which Lloyds raised the interest rate. They also proposed the following subclasses: (1) a "California principal cap" subclass for California residents whose loans had a principal cap exceeded by Lloyds; and (2) a "California interest rate manipulation" subclass for California residents whose loans had a "cost of funds" provision despite which Lloyds raised the interest rate.

The actions were related June 26, 2012. By order dated September 5, 2012, a motion to dismiss was granted with leave to amend as to all averments of fraud, including those arising under Hong Kong law. The case management order required that motions to amend or add new parties must be filed by November 30, 2012. The instant motions to amend and to intervene were filed on the very last day.

*First*, the motions seek to clarify their intended proposed class definitions. The *Dugan* plaintiffs would amend the proposed classes as follows: (1) split the "nationwide" class into two classes, one for loans with a principal-cap provision, and one for loans with a "cost of funds" provision (bringing this class into agreement with the earlier proposed *Osmena* "nationwide" classes); (2) replace the "California" subclass with two "consumer protection" subclasses, one for loans with a principal-cap provision, and one for loans with a "cost of funds" provision; (3) omit the "dollar" subclass; and (4) enlarge the "injunction" subclass to cover residents of the United States, not just California, whose loans were convertible into any currency and contained either a principal-cap provision or a "cost of funds" provision. The *Osmena* plaintiffs would amend their complaint to clarify that the intended proposed classes and subclasses, as stated in the first amended complaint, include those who hold loans with *either* a

3

principal-cap provision *or* a "cost of funds" provision, regardless whether either of these loans was also a dual currency or IMS loan. In both actions, plaintiffs contend the amendments are necessary inasmuch as Lloyds has stubbornly misinterpreted plaintiffs' claims in order to limit discovery to IMS loans only.

*Second*, in connection with the proposed amended "consumer protection" subclasses, the *Dugan* plaintiffs seek leave to amend to include claims under the consumer protection laws of not just California, but also Washington, Connecticut, Hawaii, New York, and Florida.

*Third*, plaintiffs seek leave to amend in order to extend the liability period from 2006 back to 2001, claiming that Lloyds has arbitrarily chosen to restrict discovery to 2006 forward. Plaintiffs argue that Lloyds' admission that it offered IMS loans, albeit under a different name, well before 2006, obviates the artificial 2006 cut-off. The *Osmena* plaintiffs further contend temporal expansion is necessary based on a recently-discovered brochure allegedly proving Lloyds offered loans with a "cost of funds" provision as early as 2004.

*Fourth*, plaintiffs seek leave to amend to omit all claims sounding in fraud and to make minor corrections to the complaint. Save these, Lloyds objects to all the proposed amendments discussed above.

Finally, the *Dugan* plaintiffs seek leave to add and to support intervention by two newly named plaintiffs holding dual-currency, cost-of-funds loans: (1) Rika Olson, a New York resident who obtained in 2005 two loans totaling $1,216,500, one each on a New York and a California property (at least one of which had a principal-cap provision); and (2) Jason Ray, a Hawaii resident who obtained a $435,000 loan without a principal-cap provision on a Hawaii property in 2008. Plaintiffs contend the addition of these named plaintiffs will better represent the contours of the proposed classes and the scope of Lloyds' alleged misconduct. Lloyds objects to the intervention of these new plaintiffs.

4

**ANALYSIS**

The issues break down as follows:

### 1.   AND VERSUS OR.

Plaintiffs have already challenged both violations of the principal-cap promise and violations of the cost-of-funds promise. To allow them to pursue challenges for violations of only one such promise seems to fall so clearly within what was already pled as to be reasonable and fair. Likewise, it is reasonable and fair to allow pleading of distinct classes corresponding to these violations. (In fact, the *Osmena* plaintiffs have already so pled.) If there is to be any class certified, there is no good cause to insist that it must be limited to alleged victims of both violations. One or the other (or both) would support their own claims. If Lloyds somehow misread the pleadings as so limited, then that was an unreasonable view of the pleadings. This aspect of the amendment will be allowed.

### 2.   2001 VERSUS 2006.

The class period, if there is to be any at all, will be defined in part by the longest statute of limitations, which is four years at most on our fact pattern. Damages may be recovered for proven over-charges during that period, which would run from the commencement of the action back four years. If a borrower took out a loan earlier than that, he or she could still recover for proven over-charges during the four-year period. Therefore, a borrower who took out such a loan in 2001 could still be a member of a class herein, assuming a class is ultimately certified. Class members would not be artificially limited just because the named representatives happened to take out their loans in 2006.

On the other hand, the actual fact pattern (as opposed to the pled facts) may (or may not) bear on the shape of allowable discovery. This aspect was discussed at the hearing and this order will not repeat the Court's views.

Similarly, the actual fact pattern may well inform the ultimate class definitions, if any. Counsel must be mindful of the need, under Rule 23, to demonstrate a common method of proof that will apply across the board to all class members. A standardized product, such as a standardized loan agreement (with minor variations allowable) will usually suffice to prove the

5

promise on a class-wide basis, but disparate products used in different departments of the bank may not have enough common administrative themes and proof to suffice. Counsel should be careful not to overreach lest their Rule 23 motions eventually collapse of their own weight.

With all of this mind, there is no need to amend the pleadings to further clarify the class period, for that determination will be made during the Rule 23 motions.

### 3. DUAL CURRENCY VERSUS DUAL CURRENCY PLUS.

The *Osmena* plaintiffs have consistently maintained that their proposed "interest rate manipulation" class includes all borrowers who entered any loan with Lloyds containing a "cost of funds" provision, regardless whether that loan was *also* a dual-currency loan — and regardless whether that cost-of-funds loan had a principal-cap provision or was labeled an IMS loan (Reply Br. at 3). Indeed, the plain language of the proposed class definitions in the *Osmena* first amended complaint so indicates:

> The classes is [*sic*] defined as . . . (2) All persons and entities in the United States of America that (1) entered into a loan agreement with Lloyds TSB Bank, PLC which contained a variable interest rate based upon "cost of funds" and (2) who have been subjected to interest rate increases by Lloyds TSB Bank, PLC. (Hereinafter "the Interest Rate Manipulation Class.")

(¶¶ 27–28). The *Osmena* plaintiffs now seek only to make minor, non-substantive amendments to this language (Proposed Second Amd. Compl. ¶ 31). The *Dugan* plaintiffs seek leave to split their proposed "nationwide" class into two separate classes congruent with the *Osmena* complaint: a "nationwide principal cap" class, for loans with a principal-cap provision, and a "nationwide interest rate manipulation" class, for loans with a "cost of funds" provision (Proposed First Amd. Compl. ¶ 84). The *Dugan* plaintiffs argue this will align the proposed classes across both actions and "clarify the distinct nature of the interest rate versus principal cap claims" (Br. at 6, 8).

This amendment will be allowed. Lloyds is possibly correct that the broader class cannot be certified under Rule 23. At the hearing, the judge expressed reservation about the expansion unless all class members could be covered by a set of common methods of proof. But at this pleading stage, it is premature to pretermit the possibility of a broader class. Contrary to Lloyds, there is no substantial prejudice inasmuch as the *Osmena* pleading already called out the two

6

1 broader classes and, therefore, no reasonable basis existed for Lloyds to presume that IMS loans
2 alone were the target.

### 4. INTERVENORS VEL NON.

Insofar as interveners Olson and Ray seek to intervene in the *Dugan* case to assert their own individual claims for relief, the motion is **GRANTED**. The subject matter of the claims is close enough to those already in play that such intervention should be allowed.

Insofar as they seek to assert new class-wide claims, that is as proposed representatives of classes, that is a different matter. To the extent their claims appear identical to those in play, such as, for example, the breach-of-contract claim, they may also turn out to be adequate representatives to co-assert common claims for relief. On the other hand, to the extent they seek to add new legal theories, such as claims under New York and Hawaii law, they may do so in their individual capacity but whether or not such class-wide claims should be layered onto an already complex action will risk a manageability problem under Rule 23. That determination will be made at Rule 23 time. Again, counsel ought to consider the risks of overreaching. Meanwhile, the amendment is allowed.

### 5. CALIFORNIA VERSUS NON-CALIFORNIA.

With respect to the addition of claims based on the law of jurisdictions other than California, that motion is **DENIED**, for there are no current or proposed plaintiffs who have standing to assert such claims (with the exception of New York and Hawaii, which are allowed). The claims under the laws of Washington, Connecticut and Florida will not be allowed. The mere fact that a nationwide class may eventually be certified is not a basis to lard in all of these theories. Even with the proposed new representatives, there would be no representative who himself or herself could assert such a claim under those state laws. *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026–27, 1029–30 (N.D. Cal. 2007); *In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531, 537–38 (N.D. Cal. 2009).

This would mean, for example, that if a nationwide contract-based class were certified to pursue a breach-of-promise claim for relief, then that claim and only that claim would be

adjudicated, leaving alternative theories under various state-consumer statutes to be pursued individually.

## CONCLUSION

By **NOON ON JANUARY 18**, counsel may file the proposed amendments to the extent allowed above — but only to the extent allowed above. No further Rule 12 practice will be allowed with the exception of new state law claims under Hawaii and New York law. Otherwise, an answer is due by **NOON ON JANUARY 31**.

**IT IS SO ORDERED.**

Dated: January 10, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE