Not For Publication

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DUGAN, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>LLOYDS TSB BANK, PLC,<br><br>　　　　Defendant. | Case No. 12-cv-02549-WHA (NJV)<br><br>**ORDER RE DEFENDANT'S MOTION TO FILE UNDER SEAL AND MOTION TO RETAIN CERTAIN CONFIDENTIALITY DESIGNATIONS**<br><br>Re: Dkt. Nos. 110, 111. |

## INTRODUCTION

In December 2012, plaintiffs John Dugan, *et al*. ("Plaintiffs") took the depositions of Stuart Cheetham and Richard Drean, who were designated as corporate representatives by defendant Lloyds TSB Bank, PLC ("Lloyds") pursuant to Federal Rule of Civil Procedure 30(b)(6). Pursuant to the terms of a Stipulated Protective Order (Doc. No. 105), Lloyds designated certain portions of the deposition transcripts as "confidential." Also pursuant to the terms of the Stipulated Protective Order, Plaintiffs challenged Lloyds' confidentiality designations. *See* Doc. No. 105, ¶ 6.3. Plaintiffs did not challenge them in the context of a specific motion, but generally challenged the propriety of Lloyds' designations. After the parties were unable to resolve their disagreements through appropriate meet and confer efforts, Lloyds filed the instant motion. Doc. No. 111. That motion was fully briefed and argued before the undersigned on March 12, 2013. Pursuant to the undersigned's request at oral argument, Lloyds filed a supplemental declaration in support of its motion. Doc. No. 128-1. For the reasons stated below, the undersigned will grant in part and deny in part Lloyds' motion.

# DISCUSSION

## I. ALLEGATIONS OF THE COMPLAINT

Plaintiffs allege that they purchased from Lloyds "highly risky and complex variable rate, and often variable currency, loans . . . The Loans' distinctive feature was that the interest rate was set at 1.5%, or other fixed number, above Lloyds' 'Cost of Funds,' a number not explicitly tied by the written loan documents to any published index, and incalculable by borrowers on a prospective basis." Doc. No. 114 at 2. They further allege that:

> the variable interest rate described in the Loan Documents was arbitrarily increased by Lloyds to the detriment of Plaintiffs and the Class. Based on Lloyds' "Cost of Funds" – as applied by Lloyds, an incalculable number untied to any published index – the interest rate charged to Borrowers inexplicably increased by more than 50% in less than two years, and is now almost double its original amount. FAC, ¶ 3. To reach this ever-increasing spike, Lloyds has more than quadrupled its alleged "Cost of Funds" during a time when indexes measuring the actual cost of funds to banks' lending in Yen, Swiss Francs, or other currencies, for example, the Tokyo and London Inter-Bank Offered Rates for Yen ("TIBOR" and "LIBOR," respectively) fell dramatically.

*Id*.

## II. LLOYDS' MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS

Plaintiffs deposed Cheetham and Drean on a number of topics, including Lloyds' Cost of Funds and the manner in which it was calculated. Portions of the depositions consisted of questions and answers regarding documents that Lloyds had designated as confidential. Lloyds accordingly designated certain passages of the depositions as confidential.[1] Plaintiffs challenged those designations. When the parties could not resolve their differences of opinion regarding the propriety of Lloyd's designations, Lloyds filed the instant motion. Lloyds bore the burden of persuasion on this motion. *See* Doc. No. 116 ("The burden of persuasion in any such challenge proceeding shall be on the Designating Party").

To support the appropriateness of its designations, Lloyds submitted a one-page

---

[1] The Stipulated Protective Order requires each party that designates information as confidential "must take care to limit any such designation to specific material that qualifies under the appropriate standards." Doc. No. 105, ¶ 5.1.

2

1 declaration by Nicholas Harrison, the Head of Risk & Compliance, ASIA, for the Hong Kong
2 Branch of Lloyds TSB Bank plc. *See* Doc. No. 110-1. The two substantive paragraphs of the
3 Harrison declaration state:

> 3. The design and performance of the [International Mortgage Service ("IMS")] loan program, the components of Lloyds' Cost of Funds over time, how the components are and were calculated, and internal policies and procedures affecting pricing of Lloyds TSB Bank plc's products are treated as confidential information and shared, only when disclosure is required by the necessity of the particular situation or law, with the expectation that the party receiving the information will maintain the information in confidence and not share the information with competitors or the public.
>
> 4. I believe that knowledge of this information would be of use to Lloyds' competitors and could be used to Lloyds' detriment.

*Id*. at ¶¶ 3-4. In his declaration, Harrison does not (1) state that the information at issue in the motion has not been shared publicly; (2) attempt to describe how "knowledge of this information" could be used to Lloyds' detriment; or (3) attempt to address with any specificity the bases for confidentiality for any category of information at issue in the motion. The court therefore cannot determine whether the particular information at issue should be kept confidential "to protect competitively sensitive business information" (Doc. No. 116 at 1), or how disclosure of the information would "cause [Lloyds] competitive injury" (*id*. at 2). The Harrison declaration essentially asks the court to uphold the confidentiality designations because Lloyds considers all internal information relating to the IMS program confidential. During the hearing, counsel for Lloyds argued that Lloyds did not consider all information relating to the IMS program, but only those categories of information Harrison listed in his declaration. Given the breadth and generality of those categories, the distinction appears to be without a difference.

After the hearing, Harrison submitted a supplemental declaration to support Lloyds' motion. Doc. No. 128-1. Although this supplemental declaration explains in greater detail why Lloyds considers certain categories of information confidential and addresses some of the deficiencies described above, it still fails to address the testimony at issue with any specificity and still fails to explain how disclosure of the testimony would cause any type of injury. *See* Doc. No.

3

128-1 at ¶¶ 13-14.

Between the filing of the opening and reply briefs, Lloyds agreed to de-designate certain testimony when it discovered that certain information regarding its "liquidity transfer pricing" ("LTP") charge had been made public. *See* Doc. No. 116 at 11-12. There nevertheless remain several areas of dispute. As Lloyds notes, courts have "broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including but not limited to, trade secrets or other confidential research, development, or commercial information." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

## III. ANALYSIS

Instead of addressing the specific testimony at issue in its motion, Lloyds' briefs and declarations in support thereof are filled with general, often unsupported assertions regarding broad categories of information. This level of generality obfuscates the distinction between two types of testimony. Testimony pertaining to topics such as "the exact mix of our funding between [] sources" (Drean Dep. at 124:24-25), would be sufficiently specific and detailed to pose a risk of competitive injury if it were made public. Testimony pertaining to "what a bank does" (Drean Dep. at 118:18), would not. The vast majority of the testimony Lloyds designated as confidential falls into the second category, and Lloyds has failed to establish that this type of testimony is protectable under Federal Rule of Civil Procedure 26 or Civil Local Rule 79-5.

### A. Questions and answers that do not include substantive information.

Plaintiffs challenge the confidentiality of several general questions and/or answers that are essentially devoid of content, including several questions to which Cheetham and Drean did not know the answer. *See* Cheetham Dep. at 62:5-14[2] ("Do you know any of the categories that would be charged as internal costs?" . . . "No"); 140:6-7 (Cheetham can't confirm a number); Drean Dep. at 94:6-7 ("Any reason to think it's wrong?" "No reason to think it's wrong"); 101:12-19 (Drean

---

[2] Lloyds has designated only portions of this range as confidential. For ease of use throughout this order, the court refers to the entire range of the relevant testimony and not the more specific page and line designations the parties have referenced. Moreover, because Plaintiffs challenged several designations on alternative grounds, the same testimony may be addressed at various points throughout the order.

does not know meaning of "cost of Treasury operation"); 104:1-12 (general question and answer re 2007-08 liquidity crisis in Hong Kong and general reaction to it); 107:2-3 (only challenging the designation of the question "how was the cost of the basis -- how was that derived" (Plaintiffs are challenging the designation of the answer to that question on another ground, *see infra*)); 109:3-6 (content-less discussion regarding exhibit identified only by number); 124:13-16 (discussing unidentified curve in unidentified exhibit); 147:12-17 (assuming that unidentified document was created in 2012).

Neither Harrison's original declaration nor his supplemental declaration addresses how such questions and answers are protectable under Federal Rule of Civil Procedure 26(c). Harrison also does not address how this testimony qualifies for a sealing order under this court's Local Rules. *See* Doc. 105 at ¶ 12.3 (recognizing that "[p]ursuant to Civil Local Rule 79-5 and General Order 62, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law").[3] Lloyds' briefs fail to offer any convincing argument that these passages qualify for protection. Although asked to do so at the hearing, Lloyds' counsel failed to explain how this information was, in fact, protectable under Rule 26 or on any other basis. Instead, counsel argued that the questions and answers needed to be read in context, that they related to a confidential document and/or that Lloyds considered the information confidential. The fact that Lloyds considers the information confidential is not "good cause" for filing a document under seal in this court. The motion to retain confidentiality designations for the deposition testimony referenced above is denied.

In addition to the passages Plaintiffs challenged in this category, the undersigned includes in this category the following passages that Plaintiffs challenged on other grounds: Drean Dep. at 69:19-70:1; 123:3-5; Cheetham Dep. at 122:9-12.

**B. The number and size of loan products containing a Cost of Funds component.**

Plaintiffs challenge the designation of testimony regarding the number of Lloyds products

---

[3] Because the discovery dispute has not arisen in the context of filing specific documents under seal, Local Rule 79-5 does not apply directly. It nonetheless provides guidance here.

that contain a "Cost of Funds" component and the outstanding value of the loans at various times. Lloyds responds that "testimony regarding composition of [its] portfolio, though historical, would reveal which of Lloyds TSB's pricing, marketing, geographic and other business strategies have succeeded and which have not, and the market-share and strength of Lloyds TSB's portfolio and business vis-à-vis that of its competitors. Such information is of obvious import to Lloyds TSB and would likewise be of great use to its competitors." Doc. No. 116 at 9; *see also id*. at 3 ("confidential and commercially sensitive nature of the information at issue in this case -- and the risk of competitive injury to Lloyds TSB if the information is not kept Confidential -- is manifest"). In his supplemental declaration, Harrison avers that "access" to information in this category together with other types of information "would give competitors nearly everything they would need to determine the geographic and other areas and features on which they should focus in developing or marketing a product to compete with IMS." Doc. No. 128-1 at ¶ 14.

Lloyds has failed to meet its burden. First, Harrison fails to explain how Drean's or Cheetham's actual testimony (as opposed to "this type of information") is protectable. Second, the court has reviewed each of the challenged designations, and the import of this information (especially information regarding portfolio values in 2008) is neither "obvious" to the undersigned nor "manifest." Third, Lloyds argues that this type of information is "routinely protected from disclosure to competitors" (Doc. No. 111 at 8 (citing *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 2012 U.S. Dist. LEXIS 176346, *6 (E.D. Cal. Dec. 11, 2012)). In *Stanislaus*, the court found there was good cause to retain the confidentiality of certain documents:

> These discovery documents detail Defendants' business and pricing strategies, how Defendants intend to compete in the tin mill market, in addition to providing sensitive information concerning the cost inputs of Plaintiff's supplier and other similar third parties. This trade secret and other confidential information would provide Plaintiff with significant negotiating leverage against current and potential suppliers, as well as place strain on the relationships between Defendants and their third party customers. This information is not stale, because even to the extent it does not provide direct insight into current business strategies, the information can be extrapolated to predict future strategies and practices, and is still relevant today.

Because the *Stanislaus* documents remained confidential, the undersigned cannot compare their

substance to that of the testimony at issue here. However, the undersigned has reviewed the depositions of Cheetham and Drean and concludes that the portions of testimony that are the subject of this motion lack the type of specificity and detail that, if disclosed, would be likely to harm Lloyds' interests or its customers. During the hearing, counsel for Lloyds argued that the testimony "gives insight" into Lloyds' product, and argued, in theory, that the general category of information could harm Lloyds' interests. *See also* Doc. No. 128-1 at ¶ 13. Once again, though, Lloyds failed to articulate any theory supporting its contention that the specific testimony at issue in the motion could harm Lloyds' interests.[4]

For the foregoing reasons, the court denies the motion to retain the confidentiality designations of Cheetham Dep. at 58:1-20 (number of loans that are Cost of Funds); 112:10-115:10 (number of loans outstanding when IMS program was discontinued and value thereof, number of loans over time); 138:13-139:16 (global overview of portfolio); 142:11-143:8 (total balance of IMS loans in US in 2008 and 2012); and Drean Dep. at 135:19-25 (size of cost of funds book in 2011).

### C. "Substantive" Cost of Funds testimony.

Many of Lloyds' confidentiality designations pertain to testimony regarding the components of Lloyds' Cost of Funds.[5] Lloyds explains only in the broadest terms how disclosure of this testimony would harm its competitive interests. Doc. No. 110-1 at ¶¶ 3-4; Doc. No. 128-1 at ¶ 13. The court has reviewed the testimony at issue and notes that the vast majority of the testimony does not contain information as specific as the documents discussed in the cases cited by Lloyds. *See* Doc. No. 111 at 8-9 (business and pricing strategies, financial and investment documents, how party intends to compete in market); No. 116 at 1-2 (board minutes, revenue data,

---

[4] Plaintiffs contend that this information has been made public by the filing of annual reports with the Hong Kong Monetary Authority. Doc. No. 114. Harrison refutes this in his supplemental declaration. *See* Doc. No. 128-1 at ¶¶ 6-9.

[5] Lloyds cites *General Acquisition, Inc. v. Gencorp, Inc*., 766 F. Supp. 1460, 1466 (S.D. Ohio 1990) for the proposition that "the costs of raising funds and the factors bearing thereon should not be disclosed generally to the public." Doc. No. 111 at 7. Lloyds represent that the Ohio district court describes "a company's cost of capital as 'confidential non-public information.'" *Id*. The Ohio district court, however, emphasized that this description was not a finding of fact, but rather, a summary of the allegations in the defendant's counterclaims.

employee compensation, pricing strategies).

While some documents and information regarding the components of Lloyds' Cost of Funds (including how they were calculated), internal policies and procedures affecting pricing, and decision-making (Doc. No. 116 at 2) may qualify as proprietary information that is protectable under Rule 26 and sealable under Civil Local Rule 79-5, Lloyds has not established that the testimony at issue contains such information. Lloyds only offers generalized argument without demonstrating why particular categories of testimony (much less specific portions of testimony) must remain confidential. For example, Lloyds argues that disclosing this type of information publicly would allow personal financial advisors ("Referrers") to gain insight into Lloyds' products that the Referrers and their clients "are not otherwise entitled to have and could negatively impact Lloyds" ability to compete with other lenders, "even just in maintaining its current customer relationships." Doc. No. 116 at 8. This statement is unsupported by the Harrison declarations and furthermore is so vague and general that it is unhelpful. Lloyds also argues that, even though it no longer offers IMS products, confidentiality remains important because it continues to service IMS loans and wants to maintain its relationship with current IMS customers. Doc. No. 116 at 4; *see also* Doc. No. 128-1 at ¶ 14. Lloyds' counsel repeated that argument during the hearing. But Lloyds did not explain in its briefs or at oral argument how disclosure of the information would harm either these customers or Lloyd's relationship with them, nor how the information has "current value in servicing existing loans, maintaining Lloyds' relationship with its current borrowers, and in other aspects of continuing the existing IMS business" (Doc. No. 116 at 4). Indeed, Lloyds' own corporate representative testified at length about one document before stating, "there's not enough information to understand where all these numbers come from to understand what the numbers represent." Drean Dep. at 139:24-140:2. And Lloyds admitted that some of the information it designated as confidential had, in fact, been made public. Doc. No. 116 at 11-12.

In addition, many of the deposition questions asked were abstract and general, and/or historical. *See, e.g.*, Cheetham Dep. at 55:1-56:4 & 56:13-57:11 (discussing very generally two components of Cost of Funds calculation, and who provided them to Hong Kong branch); 59:19-

24 (generally referencing services that Hong Kong branch receives from London); 61:11-18 (generally discussing charges for services); 63:23-65:25 (generally discussing changes in charges over time); 114:16-25 (generally discussing reasons for changes in volume of business over time); 118:3-120:23 (generally discussing charges for cost of fund numbers prior to 2008); 121:8-122:12 (generally discussing components and charges of cost of funds loans); Drean Dep. at 79:2-81:24. Once again, Lloyds does not explain why disclosure of this more general information would be harmful.

Moreover, Lloyds de-designated LTP-related testimony after admitting that the information had been made public (Doc. No. 116 at 11-12), but seeks to retain the confidentiality of deposition passage that contain the same information. For example, compare the de-designated Drean Deposition transcript at 49:16-51:1 and 70:9-25 (discussing function of Treasury in managing liquidity and deposits and sources of funding) with passages Lloyds seeks to designate as confidential at 122:19-124:25 (discussing generally different types of instruments addressed in exhibit) and 125:4-126:23 (document explains in simple terms how bank raises funds).

Finally, another example undermines Lloyds' argument for confidentiality about the more general testimony at issue in this motion: testifying regarding a 2007 internal document, Drean described it as a "very simple explanation" of how the bank will secure funding. Drean Dep. at 122:17-127:11. Lloyds does not explain how such a "simple" explanation – in contrast to revealing "the exact mix of our funding" (Drean Dep. at 124:24-25) – could threaten it or its clients. Similarly, Lloyds seeks to keep confidential a deposition question posed by Plaintiffs' counsel that Drean summarized as describing "what a bank does." Drean Dep. at 118:18.

The motion to retain the confidentiality of the deposition testimony described above is denied.

Other deposition testimony reveals the specific components of the Cost of Funds and LTP charge. *See* Drean Dep. at 55:3-9, 17-25; 56:1-25; 57:1-11; 59:5-9; 60:4-16; 65:17-22; 68:13-22; 69:2-6, 11-14; 76:2-4; 82:12-14; 89:9-13, 24-25; 91:2-3; 92:16-25; 93:24-94:5; 94:23-95:9; 117:23-118:1; 136:10-137:3, 18-19; 142:15-145:25, 146:10-24; Cheetham Dep. at 56:5-11; 120:25-121:3. In his supplemental declaration, Harrison represents that Lloyds does not disclose

1    the specific components of either its Cost of Funds or LTP charge, and adequately explains the

2    impact of disclosing this information. Doc. No. 128-1 at ¶ 13. The court concludes that Lloyds

3    has met its burden and grants its motion with respect to this particular testimony.

### D. Hypothetical scenarios.

Lloyds designated as confidential certain testimony relating to proposals and scenarios that were considered by Lloyds over time. Lloyds argues that this information is entitled to remain confidential because "all scenarios considered expose the factors that Lloyds TSB applies to its pricing decisions, the relative weight given to each, and its decision-making strategy and processes." Doc. No. 116 at 5. While this argument may be true in the abstract, it is not evident how it applies to the testimony at issue in this motion. *See, e.g.*, Drean Dep. at 97:3-109:21 (testimony re particular document from 2007 that discusses scenarios for increasing profit); 113:3-115:19 (testimony re increased funding costs in 2008/2009); 116:21-117:22 (testimony re various proposals Lloyds may have considered); 120:10-121:17 (discussion re whether cost of funds increased in 2010/2011 and whether liquidity costs increased); 123:21-127:11 (testimony re "very simplistic" document given to relationship managers "to give them the basic facts to be able to explain to clients what's going on. It is not a detailed financial paper"); 134:19-136:9 & 137:20-139:14 (forecasted profitability of Hong Kong branch for year ending 2011; proposal re increasing margin; Cost of Fund construction and liquidity requirements; LTP and cost of funds discussion, including specific basis points of charges but not components or method of calculation for the charges); 149:6-151:13 (discussing reason for scheduling price increases in two stages in 2012).

Plaintiffs argue that this deposition testimony addresses generic and historical aspects of the Cost of Funds calculation, and the court agrees. The motion to retain the confidentiality of these designations is denied.

### E. General business structure.

Lloyds argues that disclosure of its "internal funding mechanisms . . . could permit competitors to unfairly capitalize on" the information. Doc. No. 116 at 10. Lloyds fails to support this assertion with any declaration, or to address with specificity the testimony at issue, arguing instead that this information should be kept confidential "in the age of increasing cyber-

10

attacks that can wreak havoc on financial institutions." Doc. No. 116 at 11. During the hearing, the court asked counsel for Lloyds whether Lloyds' IT or security personnel had raised the specter of cyber-attacks. Counsel did not know who had raised the concern, only that it was of concern to the banking industry generally. Harrison does not address this point in his supplemental declaration. If Lloyds was, in fact, concerned about this threat, it should have done much more to support its assertions before this court.

The following testimony is generalized and abstract, addresses the mechanics of how information is communicated, and discusses who was responsible for certain tasks: Cheetham Dep. at 57:23-58:2 (mechanics); Drean 32:23-24 (responding to hypothetical question re how group operates); 52:23-25 (generally discussing interest rate); 75:10-76: 24 (discussing who calculates customer Cost of Funds and how information was communicated); 89:9-90:1 (what Drean did with Hong Kong).

The court understands that this information is not public, but Lloyds simply doesn't explain how this information is protectable or sealable. *See* Doc. No. 116 at 11-12. The motion to retain confidentiality designations for this category of testimony is denied.

## CONCLUSION

For the reasons stated above, Lloyds' motion to retain its confidentiality designations at issue in this motion therefore is denied in part and granted in part. Lloyds has met its burden to retain the confidentiality designations for the following testimony: Drean Dep. at 55:3-9, 17-25; 56:1-25; 57:1-11; 59:5-9; 60:4-16; 65:17-22; 68:13-22; 69:2-6, 11-14; 76:2-4; 82:12-14; 89:9-13, 24-25; 91:2-3; 92:16-25; 93:24-94:5; 94:23-95:9; 117:23-118:1; 136:10-137:3, 18-19; 142:15-145:25, 146:10-24; Cheetham Dep. at 56:5-11; 120:25-121:3. Lloyds has failed to meet its burden under Rule 26, L.R. 79-5, or any other authority, to demonstrate that the remainder of the testimony at issue in this motion is protectable or sealable.

Lloyds lodged complete, un-redacted copies of the depositions of Cheetham and Drean to this court and moved to file the documents under seal. Doc. No. 110. For the reasons stated above, that motion is denied. Lloyds shall proceed in the manner described by the Local Rules. *See* Civ. L. R. 79-5(e).

**IT IS SO ORDERED**.

Dated: March 26, 2013

_____
Nandor J. Vadas
United States Magistrate Judge