UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JOHN DUGAN, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>LLOYDS TSB BANK, PLC,<br><br>    Defendants. | Case No. 12-cv-02549-WHA (NJV)<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL**<br><br>Re: Dkt. No. 229 |

    Plaintiffs' motion to compel further production of documents and witnesses from defendant Lloyds TSB Bank, PLC ("Lloyds"), came on for hearing on September 3, 2013. For the reasons stated below, the court grants in part and denies in part the motion to compel.

## BACKGROUND

    Defendant Lloyds TSB Bank, PLC, is a bank organized under the laws of the United Kingdom with branches in Hong Kong and New York, among other places. Plaintiffs' claims in connection with certain Lloyds' loan products include contractual breaches, breach of the implied covenant of good faith and fair dealing, and violations of consumer protection laws . . . .

    Plaintiffs obtained Lloyds' "dual currency" loans. These loans, which herein Lloyds labels as International Mortgage Service ("IMS") loans: (1) were stated in U.S. dollars but could be redenominated into foreign currency at the borrower's discretion; (2) once redenominated, were allegedly subject to a "principal cap" of 120 percent of the original principal; (3) were subject to a variable interest rate to be set at 1.5 percent above Lloyds' "cost of funds"; and (4) were secured by real property in the United States.

Doc. No. 203 at 1-2. The district court certified two classes with respect to the 120% principal cap, but denied Plaintiffs' motion to certify a cost of funds class. Doc. No. 203 at 8-12.

    Plaintiffs have sought discovery regarding the calculation of Lloyds' cost of funds. Plaintiffs propounded document requests and noticed the deposition of Lloyds pursuant to Fed. R.

Civ. P. 30(b)(6). Lloyds offered Richard Drean as its witness to testify about cost of funds topics, but Plaintiffs were displeased with Drean's responses relating to how Lloyds actually calculated the cost of funds. Plaintiffs therefore sought to depose specific persons as additional witnesses regarding the cost of funds calculations, and also requested Lloyds produce additional documents from specific custodians. In January 2013, Lloyds responded it would not produce the witnesses or their documents because the witnesses were affiliated with Lloyds' parent company, Lloyds Banking Group ("LBG"). LBG is not a defendant in this action. In May 2013, Lloyds reiterated it would not produce electronically stored information for LBG custodians that Lloyds had previously identified as persons with responsive information. Lloyds took the position it was not obligated to produce the discovery because it and LBG were separate legal entities and the LBG documents and witnesses were "not necessarily" within Lloyds' custody and control. Plaintiffs filed this motion, asking the court to compel the production of witnesses and documents or, in the alternative, issue a Letter of Request for assistance to the central judicial authority of Great Britain.

## DISCUSSION

**A. Does Lloyds Have "Control" Over LBG Documents?**

Under Federal Rule of Civil Procedure 34, Lloyds must produce any documents under its "possession, custody, or control." Plaintiffs argue that Lloyds controls the responsive LBG documents based on the corporate relationship between LBG and Lloyds.

In the Ninth Circuit, "control" is defined as "the legal right to obtain documents upon demand." *In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999) ("*Citric Acid*"). A "practical ability to obtain the requested documents" from a related organization is not enough because the related organization "could legally -- and without breaching any contract -- [] refuse to turn over such documents." *Id*. at 1107-08. Plaintiffs urge the court to adopt a broader definition of "control" than the one articulated in *Citric Acid* because of the parent-subsidiary relationship between LBG and Lloyds. (*Citric Acid* involved two members of the same accounting association.) They reason that, because *Citric Acid* cited decisions from other circuits that "adopted a more expansive definition of 'legal control,'" the Ninth Circuit would approve looking

2

at other factors that suggest control might exist even in the absence of a "legal right to obtain documents on demand." *See* Doc. No. 247 at 12-14 & n.7. For example, Plaintiffs urge the court to follow the reasoning of *AFL Telecommunications LLC v. SurplusEQ.com, Inc.*, 2012 U.S. Dist. LEXIS 92892 (D. Az. July 5, 2012) and the cases on which it relies. *See* Doc. No. 247 at 16; Doc No. 251 at 2-5. In *AFL*, the Arizona district court found uncontroverted evidence that the wholly-owned subsidiary was the exclusive authorized distributor of its parent's product and the exclusive licensee of its parent's intellectual property rights related to the product; that the licensee relationship between the parent and the subsidiary was created specifically so that the subsidiary could file the lawsuit before the court; that the subsidiary housed two of its parent's technicians in its offices; and that the subsidiary and the parent maintained a close relationship during the lawsuit. 2012 U.S. Dist. LEXIS 92892 at *6. Although there was no evidence that the subsidiary had the legal right to acquire documents from its parent on demand, the *AFL* court adopted the reasoning of the out-of-circuit authority cited in *Citric Acid* and ordered the subsidiary to produce documents held by its parent. *Id.*, at *7 (relying on *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131 (3rd Cir. 1988)). In *Choice-Intersil Microsystems, Inc. v Agere Systems, Inc.*, 224 F.R.D. 471 (N.D. Cal. Sept. 30, 2004), the district court did order a wholly-owned subsidiary to produce documents in the possession of its parent. In relevant part, the district court found that the wholly-owned subsidiary had access to its parent's documents because it shared relevant databases with its parent and, upon demand, could obtain high-level documents from the parent regarding the marketing of the relevant product. *Id.* at 473-73. Even if the court were inclined to follow this reasoning, Plaintiffs have not made the same showing here.[1]

        Plaintiffs, however, have not been able to cite a single Ninth Circuit or Northern District of California opinion that has accepted their reasoning. For example, Plaintiffs quote *Perez v. State Farm Mutual Auto. Ins. Co.*, 2011 U.S. Dist. LEXIS 41009, *9 (N.D. Cal. Apr. 11, 2011), for the

---

[1] Lloyds represents that the "LTSB and GCT drive" identified in their production log was a typo and does not indicate that Lloyds had access to LTSB documents. Lloyds clarifies that the log should have read "GCT shared drive" and represents it does not have access to that drive. *See* Doc. No. 244, ¶ 9. Lloyds avers that it has no legal or contractual right to obtain LBG documents upon demand. *Id.*, ¶ 7.

3

1    proposition that "the determination of control is often fact-specific" and that the "relationship

2    between the parties" is central to each determination. Doc. No. 247 at 12. But in *Perez*, the

3    district court relied on *Citric Acid* to deny the requested discovery. *Id*. at *10 (evidence that a

4    party had obtained similar documents from a non-party in the past was "plainly insufficient" to

5    show that the party had "control" of the documents requested in the litigation).

6         Plaintiffs describe the decisions in this district that disagree with their position as

7    "extensions of Ninth Circuit law, not decisions squarely within its precedent." Doc. No. 251 at 4.

8    This court disagrees. The court finds more persuasive the reasoning of cases in this district that

9    have required parties to establish that a subsidiary has a legal right to obtain documents from its

10   parent on demand before compelling those parties to produce documents. *See, e.g., Genentech,*

11   *Inc. v. Trustees of the University of Penn.*, 2011 U.S. Dist. LEXIS 128526, *9-*10 (N.D. Cal.

12   Nov. 7, 2011) ("The fact that Genentech is wholly owned by Roche, and Roche controls

13   Genentech's Herceptin operations . . . suggests at most that Roche has the legal right to obtain

14   documents pertaining to Genentech. Penn has not shown that the converse is true") (citing the

15   unpublished case *Tessera Inc. v. Micron Tech., Inc.*, 2006 U.S. Dist. LEXIS 25114) (N.D. Cal.

16   Mar. 22, 2006)); *see also Hambrecht Wine Group, L.P. v. Millennium Imp. LLC*, 2006 U.S. Dist.

17   LEXIS 86279, *5 (N.D. Cal. Nov. 14, 2006) ("When a court is confronted with separate legal

18   entities, 'proof of theoretical control is insufficient; a showing of actual control is required.' The

19   'access' alleged by plaintiff is not the same as the 'possession, custody, or control' required by the

20   Federal Rules of Civil Procedure. Also, plaintiff fails to distinguish between a parent's control

21   over a subsidiary, and a subsidiary's control over its parent. Thus, although plaintiff might be able

22   to argue successfully that after the acquisition LVMH had control over Millennium's documents,

23   plaintiff certainly has shown no legal right possessed by Millennium to exert any control over

24   LVMH's documents").

25        Plaintiffs bear the burden of proving that Lloyds has "control" over LBG's documents.

26   *See Genentech*, 2011 U.S. Dist. LEXIS 128526, at *5. Plaintiffs have provided evidence that

27   Lloyds is a wholly-owned subsidiary of LBG; that LBG has provided documents and witnesses in

28   this case to support Lloyds' defense (including Mr. Drean, *see infra*); that LBG and Lloyds share

the same internal legal group; that the two have the exact same ten-member Board of Directors; and that LBG played a critical role in administering and profiting from the loans at issue in this lawsuit. *See, generally,* Doc. Nos. 248 & 249. But, LBG and Lloyds are separate entities, and Plaintiffs have not provided any evidence that Lloyds has the legal control to obtain documents on demand from its parent. One of the attorneys who collected documents pursuant to Plaintiffs' discovery requests, Susannah Mcdonald, submitted a declaration in this matter. *See* Doc. No. 244. She declares that Lloyds is a subsidiary of LBG; that LBG provides banking and financial services through subsidiaries, including Lloyds; and that the boards of the two entities maintain separate meeting agendas and separate minutes. *Id*., at ¶¶ 5-6, 8. In addition, Mcdonald avers that Lloyds "has no ownership interest in its parent company [LBG], and has no contractual or other legal right to obtain [LBG's] documents or information upon demand." *Id*., at ¶ 7. Macdonald also declares that the loan products at issue in this action were developed by Lloyds, offered by Lloyds, and serviced by Lloyds; LBG "does not and has not offered or serviced IMS Loans." *Id*., at ¶ 11. Although Plaintiffs' counsel argued at the hearing that LBG offered the loans through its subsidiary, Lloyds, Plaintiffs have not rebutted Mcdonald's declaration with any evidence. While the evidence Plaintiffs have offered might be sufficient to establish control under the more expansive *Gerling* test[2], the court finds it is insufficient to establish control under *Citric Acid*.

During the hearing, the court asked Lloyds to confirm that Lloyds had produced in discovery responsive documents stored on drives (or other media or hardware) it shared with LBG and to which Lloyds employees also had access. Lloyds confirmed that any documents that were equally available to both Lloyds and LBG had been included in Lloyds' discovery efforts and were being produced. The court hereby clarifies that, if any Lloyds custodians have access to documents on a drive or system that is considered or labeled an LBG drive or system, Lloyds must review those documents to determine whether they are responsive and if so, produce them.

---

[2] The court notes that the Macdonald declaration establishes that several of the factors the *AFL* Court focused on are absent in this instance. The court also notes that, unlike in *AFL*, LBG did not create Defendant for the purpose of having it file this lawsuit.

5

### B. Are Plaintiffs Entitled To Depose Additional Witnesses Under The Federal Rules of Civil Procedure?

Plaintiffs complain that the 30(b)(6) witness Lloyds designated to testify about the cost of funds, Richard Drean, was inadequate. They argue that Drean should have known more about how specific components of the cost of funds were constructed, including the LTP curve, and how this construction changed over time. Drean instead testified that people in his group "receive[d] the curve" and passed it on. Doc. No. 248, Ex. C at 64:1-14. He agreed that his group's function could be described as "fairly ministerial." *Id*. at 64:17-23. Plaintiffs did not want to depose a witness with ministerial responsibilities, but one who actually knew how the curve worked. Plaintiffs argue that Drean should have prepared more carefully for his deposition. They contend that there is evidence that other Lloyds' employees emailed persons at LBG regarding the LTP charge, and that those employees received responses from LBG. Plaintiffs argue that Drean, like those other employees, should have asked LBG to answer some questions before his deposition. Plaintiffs at oral argument confirmed that the responses to the emails they referenced were produced by Lloyds in discovery, but complain that the responses were not detailed. If anything, this undermines their argument that either other persons at Lloyds would have been better witnesses, or that Drean could have educated himself more for the deposition by asking questions of LBG.

Plaintiffs seek to look inside the "black box" that is LBG's cost of funds. In essence, they argue that, if no one at Lloyds has the key to the box, they are entitled to get someone at LBG to open the box. They therefore seek an order compelling two LBG employees[3], Duncan Alcock and Andrei Magasiner, to testify as "managing agents" in this matter pursuant to Fed. R. Civ. P. 30(b). Plaintiffs have not established that Alcock and Magasiner are managing agents for Lloyds; the evidence establishes at most that these individuals may be managing agents of non-party LBG. *See* Doc. Nos. 248 & 249, Exs. X, Y, BB, DD. But LBG and Lloyds are separate entities, and LBG is not a party in this matter. Plaintiffs have not established that Lloyds has the contractual or

---

[3] In her declaration, Mcdonald asserts that Alcock and Magasiner are LBG employees, not Defendant's employees. Doc. No. 244 at ¶ 12.

legal right to secure the appearance of these witnesses for a deposition. Lloyds therefore cannot be compelled to offer these two individuals for deposition. Plaintiffs must follow the Hague Convention procedures for securing their appearance (or serve them in the U.S. if they travel here). The court is concerned that Lloyds, when it was convenient, was able to access an LBG employee and offer him as a Lloyds deponent. At the hearing, Lloyds confirmed that Drean is a current LBG employee, and a former Lloyds employee; that it was determined, based on Drean's past employment with Lloyds, that he would be the most appropriate 30(b)(6) deponent for Lloyds; and that, when asked whether he would be willing to be a deponent for Lloyds, he volunteered to do so. Lloyds contrasts this set of facts with Plaintiffs' attempts to depose two LBG employees with no history of employment at Lloyds, who have not volunteered to be deposed. The court understands Plaintiffs' skepticism, but Plaintiffs needed more to meet their burden, and they have not.

### C. Is A Letter of Request For International Assistance Justified?

Plaintiffs ask the court to issue a Letter of Request for assistance of the central judicial authority of Great Britain to obtain deposition testimony of Alcock and Magasiner as well as documents that relate directly to the LTP charges, the IMS Loan program, and to Plaintiffs' loans.

Lloyds' opposition to Plaintiffs' request for this international discovery is anemic. Lloyds first argues that the expense of the discovery is not justified now that the district court has denied the motion to certify a cost of funds class. Lloyds, however, has not supported its assertion of undue burden with any facts. The court has simply no evidence before it that would allow it to conclude that the burden, in this instance, is not justified. Lloyds' second argument that the information sought is "not relevant to the Plaintiffs' individual claims because those claims are about the amount LTSB charged Plaintiffs, not the calculation of the amount" LBG charged Lloyds (Doc. No. 243 at 18), is unconvincing. The court finds that the information sought by Plaintiffs through their Letter of Request is likely to lead to the discovery of admissible evidence in Plaintiffs' individual cases, and further finds that Lloyds has failed to offer any evidence that the discovery would impose an undue burden.

The court is aware that Lloyds has filed a motion for protective order and cost-sharing,

which relates in part to this motion to compel. Given that international discovery typically proceeds slowly, the court will be able to address the issue of cost-sharing before Lloyds has incurred any costs in responding to the Letter of Request.

At the hearing, the court inquired whether it had the authority to issue the Letter of Request, or whether the Letter of Request should be issued by Judge Alsup. Plaintiffs are to make that determination and submit the proposed Letter of Request to the appropriate judge. If Plaintiffs determine Judge Alsup should issue the Letter of Request, they should submit their proposed order together with a copy of this order to explain why they are proceeding in that manner.

## CONCLUSION

For the reasons stated above, the court denies Plaintiff's motion to compel the production of documents under Fed. R. Civ. P. 34 and witnesses under Fed. R. Civ. P. 30. The court grants Plaintiffs' motion to issue Letter of Request subject to determining whether it or the district court should issue the Letter.

**IT IS SO ORDERED**.

Dated: September 4, 2013

NANDOR J. VADAS
United States Magistrate Judge