UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JOHN DUGAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LLOYDS TSB BANK, PLC,<br><br>Defendant. | Case No. 12-cv-02549-WHA (NJV)<br><br>**ORDER RE PLAINTIFFS' MOTION TO COMPEL AND DEFENDANT'S MOTION FOR PROTECTIVE ORDER & COST-SHARING**<br><br>Re: Dkt. Nos. 253, 266 |

The parties have filed discovery motions (Docs. Nos. 253 & 266) seeking the following relief:

(1) Plaintiffs seek to compel Defendant to produce discovery from nine custodians that Defendant has previously identified as persons likely to have relevant information, and to order Defendant do so forthwith rather than wait for the close of discovery;

(2) Plaintiffs seek to compel Defendant to comply with Judge Alsup's standing order requiring parties to make certain affirmative representations regarding the fullness of their discovery responses;

(3) Defendant requests the court enter a protective order that deems Defendant's discovery efforts complete upon the production of documents from five additional custodians; and,

(4) Defendant asks the court to order Plaintiffs to share the cost of discovery.[1]

The motions were heard on September 17, 2013. For the reasons stated below, the court

---

[1] Plaintiffs also sought the disclosure of the names and contact information of class members, but withdrew that portion of their motion at the hearing.

grants Plaintiffs' motion to compel and denies Defendant's motion for protective order and for cost-sharing.

## DISCUSSION

**A. Lloyds must produce documents (including electronically stored information ("ESI")) from the eight custodians Plaintiffs have identified in their papers.**

Lloyds has organized its discovery efforts by custodian rather than by discrete document request. Plaintiffs served their requests for production of documents on August 3, 2012. Lloyds identified 81 custodians who might have information responsive to those requests. Plaintiffs complain that Lloyds has not produced discovery from the vast majority of these custodians. In fact, Lloyds admits it only has produced ESI for fewer than 30 custodians, but points out it also has made topic/document specific productions that are not necessarily associated with any particular custodian. *See* Doc. No. 276 (Hocevar Decl.), ¶ 8 & Ex. 7. Plaintiffs ask the court to compel Lloyds to produce ESI for eight custodians without further delay: (1) Duncan Alcock; (2) Barry Luhmann; (3) Nick Harrison; (4) Bruce Hodgson; (5) Nick Brown; (6) James Gairdner; (7) Mike Berry; and (8) Stuart Lloyd-Hurwitz.[2] Lloyds identified Alcock, Brown, Hodgson, Gardner, Harrison, Luhmann and Wilcox as "custodians most likely to have responsive information" on October 24, 2012. *See* Doc. No. 267-3 (Ex. C). Lloyds identified Berry and Lloyd-Hurwitz as custodians on November 5, 2012. Doc. No. 267-4 (Ex. D). On October 29, 2012, Plaintiffs identified Harrison and Hodgson, Musty and Wilcox as priority custodians. Doc. No. 267-7 (Ex. G). On March 10, 2013, Plaintiffs added Alcock and Luhman as priority custodians. *Id*. On May 17, 2013, they added Berry, Brown, Gardner, and Lloyd-Hurwitz. *Id*.

Lloyds has taken the position that it need not finalize its production of documents until the discovery cut-off date in this action, which is October 31, 2013. Lloyds provides no legal basis for its position that it need not produce discovery until the cut-off date. Instead, Lloyds argues that the delay is due to the overbroad nature of the requests and to Plaintiffs' shifting discovery priorities. The parties negotiated a list of search terms Lloyds would use to review each

---

[2] Plaintiffs also sought to compel production of custodians Musty and Wilcox, but Lloyds has produced Musty's ESI and contends it does not have custody or control over Wilcox's documents.

1   custodian's ESI for responsiveness in October and November 2012, but Lloyds did not inform
2   Plaintiffs until August 5, 2013 that the search terms culled excessive documents.  As of the date of
3   the hearing, it appears that Lloyds will be unable to complete its discovery obligations by the close
4   of discovery if it maintains its current pace.  The undersigned finds that the discovery Plaintiffs
5   requested is relevant and the costs of production, while significant, are not disproportional to the
6   claims in this case.

7   Plaintiffs' motion to compel is granted as follows:  No later than October 15, 2013, Lloyds
8   shall produce all ESI for the first five custodians identified above.  This will have given Lloyds
9   more than year to comply with Plaintiffs' discovery requests.  Also no later than October 15, 2013,
10  the parties shall meet and confer **in person** to determine the status of production for the remaining
11  three custodians.  If Lloyds anticipates having difficulty meeting the October 31, 2013 discovery
12  cut-off for the three remaining custodians, the parties shall explore whether the production for the
13  remaining three custodians can be streamlined.  No later than October 18, 2013, the parties shall
14  file a joint three-page letter brief to update the court on the status of production and meet and
15  confer efforts.  Defendant's motion seeking to limit the production to five additional custodians
16  and for cost-sharing is denied.  Lloyds motion for protection comes at the eleventh hour, and the
17  undersigned finds that Lloyds should have understood much earlier that the discovery plans it had
18  developed with Plaintiffs were unwieldy.

19  Lloyds' tactics have prejudiced Plaintiffs in their ability to review the documents and
20  determine whether they need to depose additional witnesses and/or move to compel further
21  production after assessing Lloyds' production.  In referring discovery disputes in this case to the
22  undersigned, Judge Alsup noted that

> [t]he responsibility is on counsel to diligently prosecute all motions to compel, after meeting and conferring, such that the magistrate judge will have time to resolve them within the schedule set forth in the case management order. If any party seeks an extension of a deadline based upon discovery misconduct by the other side, please request that the magistrate judge make a recommendation as to whether or not there has been such misconduct.

27  Doc. No. 67.  The undersigned encourages Lloyds to complete its discovery obligations in a
28  timely manner in order to avoid having Plaintiffs move to extend the discovery deadline.

3

**B. The parties must comply with Judge Alsup's standing order.**

Judge Alsup's Supplemental Order to Order Setting Initial CMC in Civil Cases has been in effect since Plaintiffs filed this action. Thus, from the moment the case was assigned to Judge Alsup, the parties were aware that they would have to comply with the following obligations:

> 11. The following paragraphs on discovery provide counsel and the parties with views and guidelines of Judge Alsup so that they can plan accordingly. For good cause, the parties are invited to propose any modifications in their joint case management conference statement. Unless and until modified, however, the following provisions shall supplement the requirements of the Federal Rules of Civil Procedure and the local rules.
>
> 12. In responding to requests for documents and materials under FRCP 34, all parties shall affirmatively state in a written response the full extent to which they will produce materials and shall, promptly after the production, confirm in writing that they have produced all such materials so described that are locatable after a diligent search of all locations at which such materials might plausibly exist. It is not sufficient to state that "responsive" materials will be or have been produced. Such a response leaves open the distinct possibility that other responsive materials have not been produced.
>
> 13. In searching for responsive materials in connection with FRCP 34 requests or for materials required to be disclosed under FRCP 26(a)(1), parties must search computerized files, e-mails, voice mails, work files, desk files, calendars and diaries, and any other locations and sources if materials of the type to be produced might plausibly be expected to be found there. The Court has found that certain basic information normally learned by counsel anyway should be made available to the other side at the time of production, as if it were a response to a standing interrogatory, as follows. At the time of the production, the responding party should provide a written list to the requesting party setting forth in detail each specific source and location searched. The list must also identify, by name and position, all persons conducting the search and their areas of search responsibility. The producing party shall also provide a list describing the specific source for each produced item as well as for each item withheld on a ground of privilege, using the unique identifying numbers to specify documents or ranges. Materials produced in discovery should bear unique identifying control numbers on each page.

\*   \*   \*

> 15. Except for good cause, no item shall be received as case-in-chief evidence if the proponent has failed to produce it in response to a reasonable and proper discovery request covering the item, regardless of whether any discovery motion was made. A burden or overbreadth or similar objection shall not be a valid reason for withholding requested materials actually known to counsel or a party representative responsible for the conduct of the litigation.
>
> 16. Privilege logs shall be promptly provided and must be sufficiently detailed and informative to justify the privilege. *See* FRCP 26(b)(5). No generalized claims of privilege or work-product protection shall be permitted. With respect to each communication for which a claim of privilege or work product is made, the asserting party must at the time of assertion identify:
>
>> (a) all persons making or receiving the privileged or protected communication;
>> (b) the steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the

4

        communication;
        (c) the date of the communication; and
        (d) the subject matter of the communication.

Failure to furnish this information at the time of the assertion will be deemed a waiver of the privilege or protection. The log should also indicate, as stated above, the location where the document was found.

At the hearing, Lloyds confirmed that it had not moved for any modification of Judge Alsup's Standing Order.

The court understands that the parties have modified the applicable search parameters throughout the past year, but this does not excuse Lloyds from having kept track of what it searched, and what it produced. No later than October 1, 2013, Lloyds must provide the information required by Judge Alsup's Supplemental Order for the custodians whose information it has produced to date; Lloyds must produce the information for the remaining custodians on a rolling basis as it produces their ESI. No later than October 22, 2013, Lloyds also must provide a privilege log, which must comply with Judge Alsup's standing order. The court encourages Lloyds to be extremely specific in its privilege log entries and not to over-designate items as privileged.

Finally, the court notes that the parties did not follow its standing order, which requires the parties to meet and confer in person. In the future, the parties shall scrupulously follow both the undersigned's and Judge Alsup's standing orders or request relief from the appropriate court in writing well in advance of the obligation the party seeks to avoid.

**IT IS SO ORDERED**.

Dated: September 17, 2013

_____
NANDOR J. VADAS
United States Magistrate Judge